## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **JAMES K. BARBEE,**<br><br>    **Plaintiff,**<br><br>  **v.**<br><br>**AMIRA NATURE FOODS, LTD.,** *et al.*<br><br>    **Defendants.** | **Case No. 21–cv–12894–ESK–AMD**<br><br><br><br>**OPINION** |

**KIEL, U.S.D.J.**

  **THIS MATTER** is before the Court on defendant Brian M. Speck's motion to dismiss the second amended complaint.  (ECF No. 120.)   For the following reasons, the motion will be GRANTED IN PART AND DENIED IN PART.

### I.    BACKGROUND

####   A.    <u>The Second Amended Complaint</u>

  The second amended complaint is as voluminous as the procedural history of this case is long.  The Court presumes the parties' familiarity with the history of this case and the facts alleged.   A non-exhaustive recitation of the allegations follows only to frame the parties' substantive arguments.

  Plaintiff James K. Barbee is an individual who purchased relevant securities while living in Ohio, where he current lives, and in Washington, where he previously resided.  (ECF No. 107 (Second Am. Compl.) p. 3.) Defendant Amira Nature Foods, LTD is an entity organized under the laws of the British Virgin Islands with a principal place of business in Dubai, United Arab Emirates that sells specialty rice and third-party branded food products. (*Id.* p. 4.)   Defendant Karan A. Chanana is and was the president and/or chief executive officer of Amira during all relevant times.   (*Id.*)   Defendants Bruce

C. Wacha, Varun Sethi, and Speck served as chief financial officers of Amira from June 2014 to August 2017, August 2017 to June 2019, and late June 2019 to present, respectively.   (*Id.* pp. 5–7.)

Amira was listed on the New York Stock Exchange from October 2012 to August 2020.   (*Id.* p. 4.)   The company's ultimate delisting and related preceding actions and inactions are central to plaintiff's claims against Speck.

As alleged in the second amended complaint, the New York Stock Exchange informed Amira in August 2019 that it would cease being traded and be delisted if it did not file its Form 20–Fs for the periods ending March 2019 and March 2020 and Form 6–K for the period ending September 2019.   (*Id.* p. 78.)   Plaintiff alleges that Amira did not disclose the material facts in the letter and, instead, described it in a Form 6–K filing as a notice that the company did not comply with sections of the New York Stock Exchange Listed Company Manual.   (*Id.*)   Amira stated that it could return to compliance by filing its Form 20–F for March 2019 by February 16, 2020 and holding its shareholder meeting soon after.   (*Id.*)   Plaintiff claims that this statement was false because to be in compliance with listing requirements as of February 16, 2020, Amira would have had to file both its Form 20–F for March 2019 and Form 6–K for September 2019.   (*Id.* pp. 78, 79.)

Additional issues include Speck never furnishing, and never intending to furnish the September 2019 Form 6–K and the failure to reference a possible delisting on a particular date, even though the notice implied delisting by July 31, 2020 or August 16, 2020.   (*Id.* pp. 79–81.)   Plaintiff alleges that Amira, and Speck as chief financial officer, had a duty to accurately disclose information in real time and breach of that duty damaged him as he was purchasing and holding shares unaware that the company would soon be delisted.   (*Id.* pp. 82, 83.)

Plaintiff goes on to allege that, when Speck signed the Form NT–20–F for the fiscal year ending March 2020 on August 10, 2020, he knew with certainty that the Form 20–F was not near completion and would not be filed within the necessary five days. (*Id.* pp. 83, 84.) Ambiguous language was used to induce investors to hold their shares. (*Id.* p. 84.) Plaintiff claims that, in addition to the Form 20–Fs for the years ending March 2019 and March 2020, Speck never intended to file the Form 6–K for September 2019 by the August 16, 2020 deadline and, in fact, the Form 6–K has yet to be filed. (*Id.* p. 85.) Plaintiff did not sell his stock on August 10, 2020 and alleges that Speck intentionally did not reference the approaching delisting because it would have caused investors to sell. (*Id.* pp. 85, 86.)

Speck further stated that significant changes in fiscal results were not anticipated for March 2020, which plaintiff claims was either based on results known as of August 10, 2020—in which case they should have been reported—or for which there was no basis to make the statement. (*Id.* pp. 86, 87.) The undisclosed lack of factual basis constitutes an omission. (*Id.* p. 87.) Amira did not timely file the Form 20–Fs, according to plaintiff, in order to delay or avoid disclosure of Amira India's insolvency, internal litigation between Chanana and Amira India, and criminal charges of fraud and stock manipulation against Chanana and others. (*Id.* pp. 88, 89.) Speck chose not to disclose these facts despite knowledge of them. (*Id.* p. 89.)

Trading was halted on August 17, 2020 and never resumed, with Amira eventually being delisted. (*Id.* p. 7 n. 3.) Speck filed the Form 20–F for the year ending March 2019 the following day, a time allegedly selected so that investors could not sell shares with trading halted. (*Id.* pp. 89, 90.) Specific to litigation involving Chanana and Amira India, plaintiff claims that Speck should have been aware of the litigation in the exercise of his Sarbanes-Oxley duties and that he did not disclose facts of the litigation to investors in real time

because it would have likely resulted in them selling shares.   (*Id.* pp. 98, 99.) Similarly, plaintiff alleges that Speck should have been aware of Amira India's insolvency soon after joining Amira and disclosure of same should have been made in real time.   (*Id.* p. 106.)

## B.   <u>Procedural History</u>

Plaintiff originally filed this action in June of 2021 (ECF No. 1) and filed an amended complaint on August 15, 2022 while dismissal motion practice was ongoing (ECF No. 32 (Am. Compl.)).   On November 10, 2022, District Judge Michael A. Shipp concluded that the amended complaint was operative and denied Speck and Wacha's pending motions to dismiss as moot.   (ECF No. 41.)

Speck again moved to dismiss (ECF No. 44) and Judge Shipp granted the motion in significant part (ECF No. 48 (Mot. Dismiss Op.); ECF No. 49).   Judge Shipp dismissed plaintiff's claim under Section 10(b) of the Securities Exchange Act of 1934 (Exchange Act) and Rule 10b–5, concluding that: (1) the 2019 Form 6–K was not signed by Speck and plaintiff failed to adequately allege affirmative falsity or a duty to disclose, (2) the Form NT–20–F was not actionable merely because Speck chose not to reference delisting and any misleading statements were immunized by the safe-harbor provision of the Private Securities Litigation Reform Act of 1995 (PSLRA), and (3) insufficient facts supported plaintiff's claims related to the March 2019 Form 20–F.   (Mot. Dismiss Op. pp. 23–27.)   From there, plaintiff's state-law claims and Section 20(a) claim similarly fell.   (*Id.* pp. 28–31.)   An exception was plaintiff's claim under the Washington State Securities Act, for which Judge Shipp "decline[d] to wade into choice of law waters."   (*Id.* p. 29.)

Plaintiff and Speck's motions for reconsideration were denied.   (ECF No. 75 (Mot. Recons. Op.) pp. 12–18, 21, 22.)   Judge Shipp nonetheless granted

plaintiff's request for leave to file a second amended complaint and accordingly dismissed the claims against Speck without prejudice. (*Id.* pp.18, 19.)[1]

Plaintiff filed notices of appeal (ECF Nos. 83, 84) that were later withdrawn (ECF No. 89). This case was then reassigned to me. (ECF No. 90.) The second amended complaint followed. (Second Am. Compl.)[2] The

-------

[1] Speck asserts in his motion brief that plaintiff was only permitted to amend his Washington State Securities Act claim and no other causes of action should be considered. (ECF No. 120–1 (Speck Mot. Br.) pp.12, 34 n.6.) This is not a fair reading of Judge Shipp's decisions. Judge Shipp denied Speck's original motion to dismiss as to the Washington State Securities Act claim, declining to engage in a choice-of-law analysis without the benefit of discovery. (Mot. Dismiss Op. p.29.) Speck's motion for reconsideration was denied (Mot. Recons. Op. pp.21, 22) but Judge Shipp still dismissed all counts against Speck without prejudice and provided plaintiff one finally opportunity to amend. (*Id.* pp.18, 19; ECF No. 76 (Mot. Recons. Order) p.2.) Plaintiff sought clarification from Judge Shipp on the status of the Washington State Securities Act claim because Speck's motion for reconsideration was denied, but the claim was dismissed. (ECF No. 78 p.1.) The order cited by Speck in his moving brief (Speck Mot. Br. p.12) was Judge Shipp's response to plaintiff's inquiry, in which he clarified that plaintiff was required to replead his Washington State Securities Act claim and that the claim was to proceed to discovery (ECF No. 80). This instruction was not to the express exclusion of plaintiff's other causes of action and, given that plaintiff's claims against Speck were dismissed without prejudice and with leave to amend (Mot. Recons. Order p.2), it is unclear what Speck's basis is for arguing that only the Washington State Securities Act counts should be considered. Speck did not file a reply brief further explaining his position.

[2] Plaintiff states that certain allegations made in the second amended complaint ought to be read with allegations in the amended complaint. (ECF No. 125 (Pl.'s Opp'n Mot.) pp.13, 24, 27.) I have reviewed plaintiff's red-lined proposed second amended complaint (ECF No. 102–1) and, more usefully, compared the second amended complaint and amended complaint side-by-side to determine whether the deficiencies identified by Judge Shipp have been adequately addressed. Any further consideration of the amended complaint would be inappropriate as it has been superseded by the second amended complaint. *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). Furthermore, as intimated, I do not read the second amended complaint or compare it to the amended complaint with fresh eyes. Rather, I am bound by Judge Shipp's earlier decisions and reasoning. *See Wu v. GSX Techedu Inc.*, 738 F. Supp. 3d 527, 555 (D.N.J. 2024) (concluding that the prior judge's finding that allegations were not pleaded with sufficient particularity was controlling because, when provided an opportunity to replead, the plaintiff did not assert new allegations).

second amended complaint asserts 13 causes of action including violations of Sections 10(b) and 20(a) of the Exchange Act, primary and control-person liability under Ohio, Washington, and New Jersey statutes, common-law fraud and negligent misrepresentation, and lesser-included claims of breach of fiduciary duty, negligence, and fraudulent concealment.   (*Id.* pp. 157–90.)[3]

The parties subsequently stipulated to Wacha's dismissal.  (ECF No. 117.)  On November 21, 2024, more than three months after the second amended was filed, plaintiff filed a letter on the docket stating that he had refrained from seeking default against Speck based on representations that a motion to dismiss was forthcoming.  (ECF No. 118.)  I directed Speck to respond to the second amended complaint (ECF No. 119) and the pending motion followed (ECF No. 120).  Plaintiff moved for denial of Speck's motion as to the Securities Act of Washington claims and to strike the remainder of the motion.  (ECF No. 121.)  I denied plaintiff's motion.  (ECF No. 122.)

## II.   MOTIONS TO DISMISS

Prior to the filing of a responsive pleading, a defendant may move to dismiss a complaint for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  To survive dismissal under Federal Rule of Civil Procedure (Rule) 12(b)(6), "a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" *Doe v. Princeton Univ.*, 30 F.4th 335, 341 (3d Cir. 2022) (quoting Fed. R. Civ. P. 8(a)(2)), and—accepting the plaintiff's factual assertions, but not legal conclusions, as true—"'plausibly suggest[]' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged,'" *id.* at 342 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) and

---

[3] As plaintiff notes, Speck's motion brief does not challenge the adequacy of these lesser-included claims.  I therefore do not analyze Counts 11, 12, and 13 and permit them to proceed.  *See Otero v. Port Auth. of N.Y.*, Case No. 14–01655, 2016 WL 1260682, at *12 (D.N.J. Mar. 31, 2016).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).   Courts further evaluate the sufficiency of a complaint by "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Relevant to this motion, a plaintiff alleging securities fraud must go beyond the pleading requirements of Rule 8 and "include particularized allegations of fraud" pursuant to both Rule 9(b) and the PSLRA.   *City of Warren Police and Fire Ret. Sys. v. Prudential Fin., Inc.*, 70 F.4th 668, 680 (3d Cir. 2023).   Rule 9(b) requires that, when alleging fraud, "a party must state with particularity the circumstances constituting fraud …."   Fed. R. Civ. P. 9(b).   Malice, intent, knowledge, and other conditions of the mind may be alleged generally.   *Id.*   The complaint must describe the time, place, and contents of alleged misrepresentations and omissions and the identity of the individual who made the statement and basis for the statement's falsity.   *City of Warren Police and Fire Ret. Sys.*, 70 F.4th at 680.

The PSLRA imposes two heightened pleading requirements.   *Williams v. Globus Med., Inc.*, 869 F.3d 235, 240 (3d Cir. 2017).   The complaint must first "specify each allegedly misleading statement, why the statement was misleading, and if an allegation is made on information and belief, all facts supporting that belief with particularity."   *Id.* (quoting *Inst. Inv. Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009)).   Second, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" for each act or omission alleged.   *Id.* at 240–41 (quoting 15 U.S.C. §78u–4(b)(2)(A)).

Rule 9(b) and the PSLRA's pleading standards as to falsity may be read in harmony, but the PSLRA's requirements for alleged scienter control over Rule

9(b)'s more lenient standard. *City of Warren Police and Fire Ret. Sys.*, 70 F.4th at 681 n.1; *see also City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 880 n.7 (3d Cir. 2018) ("In general, a complaint that satisfies the PSLRA's heightened pleading standards will also satisfy Rule 9(b)'s requirements."). Irrefutable evidence of a statement's falsity need not be pleaded pursuant to Rule 9(b) or the PSLRA, but rather the "complaint must contain particularized factual allegations that plausibly allege that a statement was misleading." *City of Warren Police and Fire Ret. Sys.*, 70 F.4th at 681.

## III. DISCUSSION

### A.    <u>Count 1 – Section 10(b) and Rule 10b–5</u>

Section 10(b) of the Exchange Act makes it unlawful for any person to directly or indirectly "use or employ, in connection with the purchase or sale of any security … any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange Commission] may prescribe …." 15 U.S.C. §78j(b). Likewise, Rule 10b–5 makes it unlawful, in connection with the purchase or sale of a security, to (1) employ any device, scheme, or artifice to defraud; (2) make an untrue statement of material fact or omit a material fact necessary in order to make statements made not misleading under the circumstances; or (3) engage in an act, practice, or course of business that operates or would operate as a fraud or deceit on any person. 17 C.F.R. §240.10b–5. Section 10(b) and Rule 10b–5 require a plaintiff to allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentations or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) and causation" in order to survive dismissal. *Dang v. Amarin Corp.*, 750 F. Supp. 3d 431, 458 (D.N.J. 2024) (quoting *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008)).

### 1.    __Party Arguments__

Speck generally alleges that plaintiff's Section 10(b) and Rule 10b–5 claims fail to satisfy Rule 9(b) and the PSLRA's heightened pleading standards. (Speck Mot. Br. pp. 12–15.)   There is no dispute that Amira filed a Form 6–K and press release disclosing the contents of notice, including noncompliance with New York Stock Exchange rules—which are publicly available.   (*Id.* pp. 16–18.)   Plaintiff has failed to show that the statements made in the Form 6–K and press release were affirmatively false and the release nonetheless contained a forward-looking statement of Amira's intent.   (*Id.* pp. 17, 18.)   Speck highlights that he did not sign the August 2019 Form 6–K and argues that the complaint summarily asserts that his position and independent duties render him liable.   (*Id.* pp. 18, 19.)   Amira's Form 6–K was adequate and Speck possessed no affirmative duty to disclose.   (*Id.* p. 19.)

As for the March 2020 NT–20–F, Speck notes that even plaintiff acknowledges that merely "best efforts" would be made to file the Form 20–F within 15 days and submits that plaintiff's allegations lack scienter.   (*Id.* pp. 20, 21.)   Relevant facts as to delisting were already disclosed in the August 2019 Form 6–K and Speck had no duty to say more.   (*Id.* p. 21.)   Plaintiff's allegation that Speck stated that the company did not anticipate significant operational changes fails to consider that Speck's role did not give him insight into this prediction and also lacks requisite scienter.   (*Id.* pp. 21, 22.)   Finally, as for the March 2019 Form 20–F, Speck asserts that there are insufficient allegations concerning his knowledge of any charges or investigations involving Chanana and Amira India.   (*Id.* p. 23.)   There are also insufficient facts as to when Speck learned of information that plaintiff alleges should have been disclosed sooner.   (*Id.* p. 24.)   Nothing in the March 2019 Form 20–F can be actionable, according to Speck, because trading had already halted and plaintiff generally fails to establish loss causation.   (*Id.* pp. 25–29.)

Plaintiff responds that Judge Shipp permitted him to cure the pleading deficiencies in the amended complaint. (Pl.'s Opp'n Mot. pp. 12, 13.) The second amended complaint now explains why, for example, the August 2019 Form 6–K contained misrepresentations and reasonable reliance and loss causation exist. (*Id.* pp. 12, 13, 17, 18.) Speck is incorrect to state that there is no general duty to provide information outside of periodic reports, according to plaintiff, and omissions from timely disclosures rendered prior statements misleading. (*Id.* pp. 14, 15.) Further, whether information was timely reported is a question of fact inappropriate for the motion-to-dismiss stage. (*Id.* p. 15.) Plaintiff argues that Speck had substantial obligations to detect the fraud at issue and the inference of scienter is at least as compelling as the opposite inference when considering that Speck filed the March 2019 Form 20–F just after trading halted and he was aware of forthcoming delisting. (*Id.* pp. 15, 16.) Even if Speck accurately disclosed Amira's financial status and litigation, now-alleged deficient internal controls are actionable, according to plaintiff. (*Id.* p. 17.)

## 2.   <u>Analysis</u>

### i.   <u>The August 2019 Form 6–K</u>

Judge Shipp found in favor of Speck as to the August 23, 2019 Form 6–K. (Mot. Dismiss Op. pp. 24, 25.) He concluded that it was unclear whether Speck could be held liable because he did not sign it and, in any case, the Form 6–K disclosed that Amira was not compliant with the New York Stock Exchange Manual and therefore faced delisting. (*Id.*) The second amended complaint claims that the Form 6–K was false when made because—in order to be compliant with listing requirements by February 16, 2020—Amira would have had to file both its Form 20–F for March 2019 and September 2019 Form 6–K. (Second Am. Compl. pp. 78, 79.) Additional issues include the alleged failure

to reference a specific delisting date and Speck's alleged violation of his ongoing, real-time disclosure obligations.    (*Id.* pp. 79–81.)

The New York Stock Exchange notice, addressed to Chanana, stated that Amira failed to timely file its Form 20–F for the fiscal year ending March 2019. (ECF No. 44–12 p. 2.)[4]    It further directed Amira to both contact the stock exchange to discuss the status of the filing and issue a press release disclosing the status of the filing, delay, reason for the delay, and anticipated filing date if known.    (*Id.*)    The first requirement was already satisfied.    (*Id.*)    The notice advised that the New York Stock Exchange could—in its discretion— permit continued trading for an additional six months if the annual report and subsequent filings were not filed within six months of their due date.    (*Id.*) Delisting would commence if the stock exchange determined that an additional six-month period was inappropriate and delisting would also generally commence if the annual report and subsequent delayed filings were not made by the end of the additional six-month period.    (*Id.*)    Finally, the notice stated that Amira would be expected to hold its annual meeting as soon as practicable following completion of the delayed filing.    (*Id.* p. 3.)

The Form 6–K filed on August 23, 2019 disclosed that Amira had been notified that it was not compliant with Sections 802.01E and 302 of the New York Stock Exchange Listed Company Manual for failure to timely file its March 2019 Form 20–F and failure to hold its annual meeting.    (ECF No. 44– 4 p. 4.)    It added that, under New York Stock Exchange rules, it would "have six months from August 16, 2019, or until February 16, 2020, to file its Form

---

[4] Speck seems to refer to this notice document, which was included with his prior motion to dismiss, in his brief.    (Speck Mot. Br. p. 17.)    I find that I may consider it because it is integral to plaintiff's allegations in the second amended complaint.    *See Samra Plastic and Reconstructive Surgery v. United Healthcare Ins. Co.*, 768 F. Supp. 3d 661, 667 (D.N.J. 2025).

20–F" and that it could regain compliance with listing requirements by filing the Form 20–F prior to that date. (*Id.*) The Form 6–K expressed Amira's intent "to file its Form 20–F as soon as practicable." (*Id.*) The associated press release contained similar information, specifying that forward-looking representations such as Amira's intent to meet filing requirements and the stated compliance deadline fell within the PSLRA's safe-harbor provision. (ECF No. 44–5 p. 2.)

It is therefore difficult to depart from Judge Shipp's conclusion that "by all accounts, Amira did disclose the contents of the August 2019 Correspondence" through the August 23, 2019 Form 6–K and press release indicating that it was not compliant with the New York Stock Exchange Manual. (Mot. Dismiss Op. p. 24.) Section 802.01E of the manual further made clear that noncompliance with deadlines could result in delisting. (*Id.*; *see also* 3 Brent A. Olson, Publicly Traded Corporations Handbook § 12:61 (2025) ("[U]nder the 'truth on the market' theory, a misrepresentation is immaterial if the information is already known to the market and therefore cannot defraud the market.").)

Plaintiff tries to rope the September 2019 Form 6–K in as a subsequent filing that Amira was also required to file. (Second Am. Compl. pp. 79, 80.) But the second amended complaint does not address the obvious question of why the Form 6–K and press release disclosing the New York Stock Exchange notice would refer to a filing subsequent to the March 2019 Form 20–F at issue and not cited in the notice. Somewhat contradictorily, the second amended complaint alleges that the February 16, 2020 filing deadline in the Form 6–K and press release was not referenced in the notice (*id.* p. 79) but nonetheless argues that a filing not referenced in the notice should have been included. Plaintiff's claim as to the September 2019 Form 6–K never being filed and Speck's alleged lack of intent to file similarly do not relate to representations made in August 2019. (*See id.* pp. 79–81.)

### ii.    <u>The August 2020 Form NT–20–F</u>

Judge Shipp's motion-to-dismiss opinion acknowledged the apparent contradiction in Speck's defense as to the Form NT–20–F filed on August 10, 2020 and the March 2019 Form 20–F in which Speck disclosed that Amira was required to file the March 2019 and March 2020 Form 20–Fs and September 2019 Form 6–K or face delisting.  (Mot. Dismiss Op. p.25.)   Nonetheless, Judge Shipp concluded that plaintiff's allegation that Speck "chose not to say anything" was not actionable and representations as to Amira's intent to complete the March 2020 Form 20–F and anticipated operational changes were protected by the PSLRA's safe-harbor provision.   (*Id.* pp.25, 26.)

Absent a few additional details, such as Chanana's personal guarantee of $237 million in debt, the second amended complaint's allegations regarding the Form NT–20–F are almost identical to the amended complaint.  (*Compare* Second Am. Compl. pp.83–89 *with* Am. Compl. pp.70–75.)   Plaintiff adds the allegation that, in addition to never filing the September 2019 Form 6–K and March 2020 Form 20–F, Speck never *intended* to file these forms.   (Second Am. Compl. p.85.)   This bald assertion is not otherwise adequately supported and is not dissimilar from plaintiff's allegation in the amended complaint that Speck had no reasonable belief that either form would be filed prior to the delisting deadline.   (Am. Compl. p.72.)   This allegation is, too, repeated in the second amended complaint.   (Second Am. Compl. p.85.)

"[C]ourts in this Circuit routinely dismiss amended complaints that fail to add new factual allegations after having been previously dismissed for failure to state a claim."   *Ozturk v. Amsher Collection Servs., Inc.*, Case No. 21–18317, 2023 WL 8271808, at *3 (D.N.J. Nov. 30, 2023) (collecting cases); *see also Wu*, 738 F. Supp. 3d at 555 (concluding that the prior-assigned district judge's determination that alleged misstatements were not pleaded with particularity was controlling because the plaintiff did not add new allegations despite the

opportunity to re-plead).    Because plaintiff does little more than repackage the same allegations Judge Shipp dismissed in the amended complaint, I will dismiss them again here.

### iii.    <u>The March 2019 Form 20–F</u>

Finally, Judge Shipp dismissed plaintiff's claims related to the March 2019 Form 20–F. (Mot. Dismiss Op. pp. 26, 27.)    Judge Shipp divided these claims in two categories: (1) events disclosed in the Form 20–F that should have been reported sooner and (2) the failure to disclose India's Central Bureau of Investigations (CBI) audit and charges brought against Chanana and others. (*Id.* p. 26.)    The amended complaint failed to plead when charges were brought or when the results of the audit were disclosed, according to Judge Shipp, and further omitted facts supporting the inference that Speck intentionally delayed or omitted information or that anything in the March 2019 Form 20–F caused a loss for plaintiff.    (*Id.* p. 27.)

Speck raises similar arguments in his brief, asserting that the second amended complaint does not support his knowledge of charges or the audit. (Speck Mot. Br. p. 23.)    Even if Speck did have knowledge, Speck had no duty to disclose uncharged wrongdoing.    (*Id.* pp. 23, 24.)    The second amended complaint also lacks loss causation, according to Speck.    (*Id.* p. 28.)

Plaintiff contends that these allegations have been amended.    (Pl.'s Opp'n Mot. pp. 13, 14.)    Indeed, while much of the second amended complaint repeats its predecessor, plaintiff has added new allegations.    These include that, in the exercise of his Sarbanes-Oxley duties, Speck would have been aware of the May 2019 audit that preceded the CBI investigation and failed to disclose the audit, investigation, or ultimate report in an effort to deceive investors.    (Second Am. Compl. pp. 130, 131.)    Plaintiff also adds allegations of scienter.    (*Id.* pp. 135–41.)

14

The second amended complaint alleges that criminal charges were filed against Chanana and others at Amira India in "late 2020." (*Id.* pp. 131, 132.) This allegation buttresses Judge Shipp's understanding that news of the CBI investigation was not released until November 2020. (Mot. Dismiss Op. p. 27.) Judge Shipp determined that it was unclear whether Speck was aware of the charges—or even the preceding audit—prior to the filing of the March 2019 Form 20–F. (*Id.*) Plaintiff, again, does not allege when precisely the CBI's report was registered but nonetheless alleges that Speck did not disclose the report or the underlying audit and investigation as part of a scheme to deceive investors. (Second Am. Compl. pp. 131, 132.) Even assuming—as I do not—that Speck was aware of the audit and investigations, insofar as plaintiff seeks to hold Speck liable for failing to provide notice of the possibility of charges, "[t]here is no duty to disclose specific 'litigation risks' that were not 'substantially certain to occur.'" *SLF Holdings, LLC v. Uniti Fiber Holdings, Inc.*, 499 F. Supp. 3d 49, 60 (D. Del. 2020) (quoting *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004)). Plaintiff seeks more— disclosure of underlying information and investigations without alleging when such information was known and the degree of risk that then-existed. I conclude that plaintiff's Section 10(b) and Rule 10b–5 claims still struggle to clear the hurdles identified by Judge Shipp and will accordingly dismiss Count 1 as to Speck.

## B.    Count 2 – Section 20(a)

Section 20(a) of the Exchange Act imposes joint and several liability on any person who directly or indirectly controls a person liable under the Exchange Act. 15 U.S.C. §78t(a). An exception exists if the controlling person acted in good faith and did not induce the act underlying the violation. *Id.* Section 20(a) claims are derivative of an underlying violation committed by a controlled person. *See Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 247 (3d

Cir. 2013).   Such claims require that "(1) the defendant controlled another person or entity; (2) the controlled person or entity committed a primary violation of the securities laws; and (3) the defendant was a culpable participant in the fraud."   *Carmack v. Amaya Inc.*, 258 F. Supp. 3d 454, 466 (D.N.J. 2017). Control-person liability may be premised on inaction if the inaction "was deliberate and done intentionally to further the fraud."   *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 485 (3d Cir. 2013) (quoting *Sharp v. Coopers & Lybrand*, 649 F.2d 175, 185 (3d Cir. 1981)); *see also Stichting Pensioenfonds ABP v. Merck & Co., Inc.*, Case No. 05–05060, 2012 WL 3235783, at *11 (D.N.J. Aug. 1, 2012) ("The culpable participation element of a §20(a) claim mirrors the scienter element of a §10(b) claim.").

Speck asserts that plaintiff's Section 20(a) claim fails because the second amended complaint insufficiently pleads his culpable participation.   (Speck Mot. Br. p.29.)   There is no allegation that Speck controlled any other individual defendant.   (*Id.*)   Insofar as Section 20(a) liability is based on Speck's control of the company, Speck asserts that it fails because it is not supported by an underlying violation of Section 10(b).   (*Id.* p.30.)

Plaintiff responds that he has sufficiently alleged that Speck was a control person of Amira and that he can be liable if Amira committed a primary violation.   (Pl.'s Opp'n Mot. p.19.)   He notes that courts within this District have not required plaintiffs to plead culpable participation by a control person and he does not have access to potential evidence supporting culpable participation.   (*Id.* pp.20, 21.)   Assuming that he must plead culpable participation, plaintiff claims that he has adequately amended his allegations and that, while scienter is distinct from culpable participation, such allegations may bolster claims of culpable participation.   (*Id.* pp.19, 20, 22.)

Plaintiff notes that Judge Shipp dismissed his Section 20(a) claim for failure to plead a primary violation of the Exchange Act.   (*Id.* p.18.)   That

reasoning was then substituted in the motion-for-reconsideration opinion and, instead, lack of culpable participation was used to support dismissal of plaintiff's claim.  (*Id.*)  This is a fair reading of the decisions.  Judge Shipp originally dismissed the Section 20(a) claim by concluding that plaintiff "fail[ed] to make a viable primary claim against Speck."  (Mot. Dismiss Op. p. 28.)  In the motion-for-reconsideration decision, Judge Shipp acknowledged—as pointed out by plaintiff—that "a Section 20(a) claim *may* exist here because he alleged that Amira committed a primary violation, and that Speck was a control person over at least one of Amira's primary violations."  (Mot. Recons. Op. p. 12 n. 7.)  He then went on to make explicit findings as to plaintiff's control-person claim, concluding that culpable participation must be pleaded and that plaintiff failed to adequately do so.  (*Id.* pp. 13–15.)

Whether a plaintiff must plead culpable participation remains an open question within this Circuit.  *See City of Southfield Fire and Police Ret, Sys. v. Hayward Holdings, Inc.*, Case No. 23–04146, 2025 WL 1577315, at *17 n. 5 (D.N.J. June 4, 2025).  Indeed, the trend within the Third Circuit is to *not* require a plaintiff to plead culpable participation.  *See Strougo v. Mallinckrodt Pub. Ltd. Co.*, Case No. 20–10100, 2022 WL 17740482, at *11 (D.N.J. Dec. 16, 2022).  I am not considering this question on first instance, however.  Judge Shipp explicitly stated in his motion-for-reconsideration opinion that he was persuaded by caselaw requiring plaintiffs to plead culpable participation and plaintiff was to be held to that standard.  (Mot. Recons. Op. p. 14 n. 8.)  I am bound by that decision notwithstanding conflicting, nonbinding opinions within this District.[5]

I thus turn to the amended pleadings.  Though some of the allegation that plaintiff points me to (Pl.'s Opp'n Mot. pp. 19, 20) repeat those contained in the

---

[5] Because I will ultimately permit plaintiff's Section 20(a) claim to proceed, I do not consider his request for certification to the Third Circuit.  (Pl.'s Opp'n Mot. pp. 22, 23.)

amended complaint, plaintiff makes some notable additions.    For instance, in alleging scienter, plaintiff claims that Speck's failure to disclose Amira India's fraud, Amira's insolvency, and Amira and Chanana's litigation to investors was motivated by a desire to prevent them from being able to sell their shares and to avoid negative effects on Amira's listing status, Amira India's liquidation proceedings, and internal litigation between Chanana and Amira.    (Second Am. Compl. pp. 135–38.)    Speck would have learned of these facts and disclosed them in the reasonable exercise of his Sarbanes-Oxley duties, raising the inference that he intentionally delayed disclosure.    (*Id.* p. 138 n. 90.)    If disclosure was not delayed because Speck did know of these facts, such lack of knowledge evidences scienter in disregarding his statutory duties and concealing issues plaguing the company.    (*Id.* p. 138 ns. 89, 90; *see* also *id.* p. 161 (alleging that, insofar as Speck did not learn of facts prior to August 2020, his lack of knowledge demonstrates scienter and satisfies the culpable participation requirement).)    I am satisfied that plaintiff has adequately pleaded culpable participation by Speck.    *See In re Cognizant Tech. Sols. Corp. Secs. Litig.*, Case No. 16–06509, 2020 WL 3026564, at *34 (D.N.J. June 5, 2020) (concluding that the plaintiff's allegations that the defendants participated and implemented the bribery scheme demonstrated their knowledge of the scheme and their alleged scienter allowed the court to infer that subsequent inaction was with requisite intent).

Working backward, plaintiff alleges that Speck participated in the daily management of Amira's finances and operations, could and did influence control over the board of directors' decision-making, and had direct supervisory involvement in day-to-day operations.    (Second Am. Compl. pp. 158, 159.)    I am satisfied that plaintiff adequately pleads that Speck was a control person over Amira.    *See Zhengyu He v. China Zenix Auto Int'l Ltd.*, Case No. 18–15530, 2020 WL 3169506, at *13 (D.N.J. June 12, 2020) (finding that the

defendants "easily" fit the definition of "control persons" because they were both high-level officers with control over SEC filings); *see also e.g.*, *Touchtone Grp., LLC v. Rink*, 913 F. Supp. 2d 1063, 1082 (D. Colo. 2012) (concluding that the plaintiff sufficiently asserted control-person liability against the interim chief financial officer because he was a chief executive who either prepared or had ultimate control over the allegedly actionable statements).

Speck argues that he did not control the other individual defendants and to the extent that liability is premised on his control of Amira, no primary violation has been adequately alleged.    (Speck Mot. Br. pp. 29, 30.)    However, there is no motion before me concerning Amira's potential liability and I am not satisfied at this juncture and without fulsome briefing that no liability exists. As Judge Shipp has already recognized, a Section 20(a) claim may be asserted against Speck premised on a primary violation committed by Amira.    (Mot. Recons. Op. p. 12 n. 7.)    Because I will not dismiss claims against Amira for which a motion has not been filed and I find that plaintiff has adequately addressed Judge Shipp's concerns as to culpable participation (*id.* pp. 13–15), I will permit the Section 20(a) claim to proceed.

### C.    Counts 3 and 4 – Ohio Securities Act

Judge Shipp dismissed plaintiff's Ohio Securities Act claim, concluding that the amended complaint failed to allege that Speck knowingly made any false representation or caused Amira to sell any shares with knowledge of its insolvency.    (Mot. Dismiss Op. pp. 28, 29.)    Judge Shipp declined to reconsider his decision, finding again that plaintiff failed to plead that Speck acted knowingly by, for instance, alleging when, how, and to whom Speck caused shares to be sold or when and how he knew Amira was insolvent.    (Mot. Recons. Op. pp. 15–17.)

Speck piggybacks on Judge Shipp's decisions, asserting that plaintiff fails to plead scienter and does not allege that Speck knowingly made any false

19

misrepresentation, intended to deceive, or caused any shares to be sold with knowledge of Amira's insolvency.   (Speck Mot. Br. pp. 31, 32.)   Speck claims that he was not even employed by Amira during the year in which it was allegedly insolvent.   (*Id.* p. 32.)   Rather, the complaint states that Speck was the one who disclosed Amira's insolvency.   (*Id.*)

Plaintiff contends that "knowingly" may be met where knowledge should have been obtained through the exercise of reasonable diligence.   (Pl.'s Opp'n Mot. p. 23.)   The second amended complaint claims that Speck should have obtained knowledge through the reasonable exercise of his Sarbanes-Oxley duties.   (*Id* pp. 23, 24.)   Control-person liability is also asserted.   (*Id.* p. 25.) Amira could not have been listed on the New York Stock Exchange and plaintiff could not have purchased shares absent Speck's certification of financial disclosures.   (*Id.*)   Liability does not require knowing participation in the primary violation, according to plaintiff, and he has cured any potential pleading deficiencies.   (*Id.* p. 26.)

The second amended complaint alleges that Amira was insolvent during the entire period between March 2019 and March 2020.   (Second Am. Compl. p. 115.)   Plaintiff relies on the company's book value of -$7.50 per share for the year ending March 2019 and uses Speck's representation in the March 2020 Form NT–20–F that operations were not anticipated to significantly change for March 2020 to extend that insolvency through the year.   (*Id.* pp. 115, 163, 164.) Plaintiff claims that Speck was a substantial contributing factor to his purchases due to his failure to make real-time disclosures of Amira's insolvency and knowledge may be deemed to have been obtained through reasonable exercise of his Sarbanes-Oxley duties.   (*Id.* pp. 162, 163.)   Ohio Rev. Code § 1707.41(A) places liability on individuals who offer a security through an advertisement that contains a false statement or omission of material fact. (*Id.* p. 165.)   As for control-person liability, the second amended complaint

states that Speck may be liable to the extent that he actively participated in the alleged conduct.    (*Id.* p. 139.)   Speck was the officer in charge of preparing internal financial documents and even if it was Amira that chose not to disclose insolvency, Speck prepared and signed financial documents.    (*Id.* p. 167.)

Plaintiff asserts liability under several sections of Ohio Code including knowingly making or causing to be made false representations in the sale of any security; selling any security without disclosing insolvency to the purchaser; selling or causing to be sold or offering or causing to be offered securities of an insolvent issuer with intent to deceive; knowingly engaging in an illegal, fraudulent, or prohibited act in the sale of securities; or making, issuing, or publishing—or causing the same—any statement or advertisement as to the value of securities with knowledge of material falsity.    Ohio Rev. Code §§ 1707.44(B)(4), (D), (F), (G), (J).   The substance of his allegations against Speck is the alleged failure to disclose insolvency.   Therefore, I can conclude off the bat that his claims against Speck cannot be maintained under Ohio Rev. Code §§ 1707.44(B)(4) and (J).   *See Escue v. Sequent, Inc.*, 869 F. Supp. 2d 839, 853 (S.D. Ohio 2012) ("It is well settled that §§ 1707.44(B)(4) and 1707.44(J) prohibit only an affirmative misrepresentation.   Neither statutory provision applies to a fraudulent nondisclosure or an omission of material facts.").   I am further constrained to agree with Speck that, even if knowledge is adequately pleaded, it does not explain when or how Speck caused shares to be sold. (Speck Mot. Br. p. 32.)   Judge Shipp relied on a similar absence of such details in denying plaintiff's motion for reconsideration and I review the second amended complaint through that lens.   (Mot. Recons. Op. p. 17.)   Count 3 will therefore be dismissed.

These barriers do not extend to Count 4, alleging control-person liability. Ohio law imposes liability for losses or damages sustained by the reliance on a false material statement or omitted material fact in a circular, prospectus, or

advertisement on those who offer for sale or receive profits from the sale of the security. Ohio Rev. Code §1707.41(A). When a corporation is liable under Ohio Rev. Code §1707.41(A), its directors are also liable unless they show that they had no knowledge of the publication at issue or had just and reasonable grounds to believe that statements were true and omissions were immaterial. Ohio Rev. Code §1707.41(B)(1). Director liability is the rule rather than the exception when the company is liable. *See In re Nat'l Century Fin. Enters., Inc.*, 504 F. Supp. 2d 287, 307 (S.D. Ohio 2007) ("[T]he Ohio statute expressly provides that directors are liable for the securities violations of their corporations unless they prove otherwise.").

Like my analysis of Section 20(a) liability, I will permit plaintiff's control-person claim to proceed because claims against Amira remain viable and I have not received briefing as to the merits of those claims. *See id.* at 306 (finding that an Ohio Rev. Code §1707.41(B)(1) claim was sufficiently pleaded because the complaint alleged an underlying securities violation by the corporation and that the defendants were outside directors). Speck's motion to dismiss will be denied as to Count 4.

### D.    Counts 5 and 6 – Washington State Securities Act

Judge Shipp allowed plaintiff's Washington State Securities Act claim to proceed rather than "wade into the choice of law waters presented by [plaintiff's] claims …." (Mot. Dismiss Op. p.29.) He reiterated that position on reconsideration, declining to entertain Speck's more robust argument asserting that plaintiff failed to adequately plead his Washington claim. (Mot. Recons. Op. pp.21, 22.)

Speck covers his bases this time around, first alleging that there is no territorial nexus between Speck, plaintiff, and Washington. (Speck Mot. Br. p.32.) The place of residence or business of a non-party broker in Washington does not create such nexus and, in any case, purchases through the Washington

broker predate Speck's tenure.   (*Id.* pp. 32, 33.)   On the merits, the complaint does not include untrue statements or omissions made by Speck.   (*Id.* p. 33.) No alleged omissions were about existing facts, according to Speck, and because there is no underlying violation, control-person liability is inapplicable.   (*Id.* p. 34.)

Plaintiff responds that Speck's arguments were twice rejected by Judge Shipp and he has repleaded his claims to include an alleged violation of Wash. Rev. Code §21.20.010(3), which prohibits fraud or deceit.   (Pl.'s Opp'n Mot. pp. 26, 27.)   Scienter nor intent to defraud are required and the second amended complaint alleges purchases from Washington-based accounts while Speck was chief financial officer.   (*Id.* p. 27.)   Plaintiff adds that he has clearly pleaded primary violations and Speck is a control person.   (*Id.* p. 28.)   Control-person liability does not require culpable participation or scienter, according to plaintiff, but rather the burden is on Speck to establish good faith.   (*Id.* p. 29.) Liability is presumed based on Amira's primary violation.   (*Id.* p. 30.)

The Washington State Securities Act makes it unlawful for any person— in connection with the offer, sale, or purchase of any security—to (1) employ a device, scheme, or artifice of fraud; (2) make an untrue statement of material fact or omit to state a material fact necessary to make statements made not misleading under the circumstances in which they were made; or (3) engage in an act, practice, or course of business that operates or would operate as a fraud or deceit on a person.   Wash. Rev. Code §21.20.010.   A Washington statutory claim requires (1) the commission of a fraudulent or deceitful act and (2) the act's connection with the offer, sale, or purchase of a security.   *McClellon v. Citigroup Glob. Mkts., Inc.*, Case No. 18–00978, 2018 WL 5808440, at *3 (W.D. Wash. Nov. 6, 2018).   Washington State Securities Act claims differ from Rule 10b–5 claims in that there are no scienter or causation requirements. *Somerset Commc'ns Grp., LLC v. Wall to Wall Advert., Inc.*, Case No. 13–02084,

2014 WL 1794676, at *8 (W.D. Wash. May 6, 2014).   A fact is material if a reasonable person would attached importance to it in choosing their action in the relevant transaction and an omission is material if there is a substantial likelihood that disclosure would have been viewed by the reasonable investor as significantly altering the total mix of information available.   *Zunum Aero, Inc. v. Boeing Co.*, Case No. 21–00896, 2022 WL 2116678, at *13 (W.D. Wash. June 13, 2022).   Rule 9(b)'s heightened pleading standard applies to Washington State Securities Act claims.   *See McClellon*, 2018 WL 5808440, at *3.

Like Judge Shipp, I decline to dismiss plaintiff's Washington statutory claims based on a lack of territorial nexus.   The case cited by Speck, *WM High Yield Fund v. O'Hanlon*, dismissed the Washington State Securities Act claim, concluding that the nonparty advisor's receipt of mail in Washington was insufficient.   Case No. 04–03423, 2005 WL 6788446, at *18 (E.D. Pa. May 13, 2005).   Plaintiff alleges more here.   Plaintiff claims that he purchased Amira stock in Washington-based accounts and based on misrepresentations transmitted over the phone and email to Washington in 2017, 2018, 2019, and 2020.   (Second Am. Compl. pp.20, 21.)   Plaintiff alleges that Speck informed his Washington-based broker that he was planning to prepare the March 2020 Form 20–F without mentioning that the September 2019 Form 6–K was due first.   (*Id.* p.80 n.57.)

Without on-point authority with which to dismiss plaintiff's claim on territorial grounds, I turn to the merits of plaintiff's claim, which Judge Shipp declined to do on reconsideration.   Plaintiff's brief points to allegations including that he purchased Amira stock in Washington-based accounts in 2017, 2018, 2019, 2020 and information was withheld, and Form 20–Fs were delayed, regarding Amira India's insolvency, investigations, and litigation so that investors would not sell their stock.   (Pl.'s Opp'n Mot. p.27 (citing Second

Am. Compl. pp. 20, 21, 88, 89, 131).)   These allegations are sufficient under Rule 9(b).   *See Farley v. GameStop Corp.*, Case No. 12–04734, 2013 WL 4042434, at *3 (D.N.J. Aug. 7, 2013) ("A plaintiff is not required to allege a date, place, or time to meet Rule 9(b)'s heightened standards.   Rule 9(b) requires a plaintiff to 'plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged.'" (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984))) (analyzing a New Jersey Consumer Fraud Act claim).

I also find that the allegations are sufficient to set out a Washington State Securities Act claim.   For example, in *Freeman v. Seneca Ventures, LLC*, the defendant property developer sold plaintiff an interest in a limited liability company created to purchase, renovate, and operate a hotel.   Case No. 80541–0–I, 2021 WL 423135, at *1 (Wash. Ct. App. Feb. 8, 2021).   The venture defaulted following building-permit and construction-loan issues and the plaintiff filed suit and prevailed at summary judgment.   *Id.* at *2.   None of the investment materials warned of risks associated with permitting and financing delays or the risk of default before construction began.   *Id.* at *4. The Washington Court of Appeals, in affirming, concluded that the defendant omitted such risks from the total mix of information available to investors.   *Id.* at *5.

Similar considerations are at play here.   Taking plaintiff's allegations as true, there is a substantial likelihood that undisclosed issues including Amira India's insolvency and internal litigation would have been viewed by the reasonable investor as significantly altering the total mix of information available.   *Zunum Aero, Inc.*, 2022 WL 2116678, at *13.   Speck's motion to dismiss Count 5 of the second amended complaint will be denied.

The Washington State Securities Act also imposes joint and several liability on partners, officers, and directors absent proof that they did not know, and could not have known in the exercise of reasonable care, the facts on which liability is premised. Wash. Rev. Code §21.20.430(3). Such claims require both a primary violation and the defendant's exercise of control over the primary violator. *Hunichen v. Atonomi LLC*, Case No. 19–00615, 2019 WL 7758597, at *15 (W.D. Wash. Oct. 28, 2019), *report and recommendation adopted*, 2020 WL 1929372 (W.D. Wash. Apr. 21, 2020). Washington courts look to whether the defendant possessed the requisite level of control by looking to their participation in the operations of the corporation in general and their power to control the specific activity on which the violation is predicated. *See Hyun Jung Hong v. Yoo*, Case No. 77164–7–I, 2019 WL 182525, at *4 (Wash. Ct. App. Jan. 14, 2019).

The second amended complaint makes allegations including that the chief financial officers, including Speck, exercised control over Amira's financial statements. (Second Am. Compl. pp. 21, 22.) This includes control over their contents, their accuracy, and whether and how to communicate them. (*Id.*) I am satisfied that plaintiff has met his burden at the pleading stage and will permit Count 6 to proceed.

### E. Counts 7 and 8 – New Jersey Uniform Securities Act

Judge Shipp dismissed plaintiff's New Jersey Uniform Securities Act claim based on his earlier finding that plaintiff failed to adequately allege scienter as part of his federal claims. (Mot. Dismiss Op. pp. 29, 30.) Speck asserts that plaintiff is incorrect that scienter is not an element of a Uniform Securities Act claim and his New Jersey claims must fail. (Speck Mot. Br. pp. 34, 35.)

Plaintiff argues that even if scienter under the Exchange Act and Uniform Securities Act requires similar proofs at trial, no more than the Rule 9(b)

standard is applicable to the Uniform Securities Act at pleading.   (Pl.'s Opp'n Mot. pp. 30, 31.)   Thus a claim may survive dismissal under the Uniform Securities Act, but not the Exchange Act.   (*Id.*)   Plaintiff claims that he has sufficiently pleaded that Speck induced him to hold his shares and his knowledge and intent while doing so.   (*Id.* pp. 31, 32.)   The second amended complaint also separates out control-person liability into a separate claim and plaintiff argues that it is unclear whether the same pleading standards apply for Exchange Act and Uniform Securities Act claims. (*Id.* pp. 32, 33.) Culpable participation need not be pleaded.   (*Id.* p. 33.)   Plaintiff states that he has bolstered his Uniform Securities Act claims and that, while scienter and a misrepresentation or omission by Speck is not required, he has nonetheless made such allegations.   (*Id.* p. 34.)

The Uniform Securities Act imposes civil liability on those who offer or sell a security "by means of any untrue statement of material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading (the buyer not knowing of the untruth or omission)...."   N.J. Stat. Ann. §49:3– 71(a)(2).   Liability may also be imposed for offering or selling a security by employing a device, scheme or artifice to defraud or offering or selling a security by engaging in an act, practice, or course of business that operates or would operate as a fraud or deceit on a person.   *Id.* §§49:3–71(a)(3), (4).   To plead a Uniform Securities Act claim, "a plaintiff must allege: '(1) an untrue material statement or omission; (2) scienter; (3) causation; and (4) injury to a plaintiff.'" *Lord Abbett Mun. Income Fund, Inc. v. Citigroup Glob. Mkts., Inc.*, Case No. 11–05550, 2012 WL 13034154, at *8 (D.N.J. July 12, 2012) (quoting *Derobbio v. Harvest Cmtys. of Sioux City, Inc.*, Case No. 01–01120, 2002 WL 31947203 at *6 (D.N.J. Oct. 30, 2002)).   Causation is established through privity and, unlike a common-law fraud claim, reliance is not an element of the claim.   *Id.*;

*see also Greenberg v. Pro Shares Trust*, Case No. A–0759–10T3, 2011 WL 2636990, at *9 (N.J. Super Ct. App. Div. July 7, 2011) ("Our Supreme Court has examined this statutory language and noted that plaintiffs have 'a significantly lower burden' under the [Uniform Securities Act] than for common law fraud." (quoting *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1197 (N.J. 2000))).    Rule 9(b)'s pleading standard applies to Uniform Securities Act claims.    *See Sync Labs LLC v. Fusion Mfg.*, Case No. 11–03671, 2013 WL 4776018, at *6 (D.N.J. Sept. 4, 2013).

Insofar as Judge Shipp's earlier dismissal was premised on lack of scienter, I find that this deficiency has been addressed in the second amended complaint.    (Second Am. Compl. pp. 135–41.)    Because Speck relies on that same argument in his moving brief, I will not dismiss Count 7 on unasserted grounds.

The Uniform Securities Act also imposes joint and several liability on every partner, officer, or director of a seller liable under N.J. Stat. Ann. § 49:3–71(a) unless they sustain their burden of proving that they did not know and could not have known in the exercise of reasonable care the existence of facts giving rise to liability.    N.J. Stat. Ann. § 49:3–71(d).    As I have recognized in assessing plaintiff's other control-person claims, the question of whether Amira is liable is not before me.    I will therefore permit plaintiff's derivative claim to proceed.    *See EcoShelf Grp., Inc. v. Horn*, Case No. 10–02171, 2010 WL 11570285, at *5 (D.N.J. Sept. 21, 2010) (finding that the complaint stated a N.J. Stat. Ann. § 49:3–71(d) claim by alleging that the defendant was a shareholder and manager and, since the company and principal filed an answer instead of a motion to dismiss, declining to dismiss the derivative claim).    In *Horn*, the defendant challenged his status as a manager, but the court nonetheless accepted the plaintiff's allegations as true and stated that the extent of the defendant's involvement could be deciphered in discovery.    *Id.* at *5 n.2.

Speck makes no such argument here or otherwise explicitly addresses plaintiff's control-person claim.   His motion will be denied as to Count 8.

### F.    Counts 9 and 10 – Common-Law Fraud and Negligent Misrepresentation

Judge Shipp dismissed plaintiff's common-law fraud and negligent misrepresentation claims due to his conclusion that plaintiff failed to plead material misrepresentations or scienter as part of his Section 10(b) and Rule 10b–5 claims.  (Mot. Dismiss Op. pp. 30, 31.)   Judge Shipp repeated this conclusion on reconsideration, finding that plaintiff merely disagreed with his earlier opinion rather than offered new evidence or a contrary controlling decision.   (Mot. Recons. Op. pp. 17, 18.)

Speck argues that plaintiff's common-law fraud claim continues to fall short without a material misrepresentation, scienter, or loss.   (Speck Mot. Br. p. 35.)   The negligent misrepresentation claim similarly fails as it hinges on real-time disclosure requirements.  (*Id.* p. 36.)   Claims premised on SEC filings and the 2018 investor presentation fail, according to Speck, because they are not attributable to him.  (*Id.*)   Speck's alleged statement to plaintiff's broker about moving on to the March 2020 Form 20–F was forward-looking and not actionable.  (*Id.*)   Plaintiff represents that he has cured the deficiencies identified by Judge Shipp.   (Pl.'s Opp'n Mot. pp. 35, 36.)

A plaintiff pleading a common-law fraud claim must allege "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Marina Dist. Dev. Co., LLC v. Ivey*, 93 F. Supp. 3d 327, 339 (D.N.J. 2015) (quoting *Hoffman v. Hampshire Labs, Inc.*, 963 A.2d 849, 855 (N.J. Super. Ct. App. Div. 2009)).   A negligent misrepresentation claim requires the plaintiff to allege an incorrect statement that was negligently made, justifiably relied

upon, and resulted in economic loss due to the reliance. *Rapid Models & Prototypes, Inc. v. Innovated Sols.*, 71 F. Supp. 3d 492, 505 (D.N.J. 2014).

Plaintiff directs me to a paragraph in the second amended complaint in which he states that fraud based on an omission need not be pleaded as precisely as a claim based on an affirmative misrepresentation. (Pl.'s Opp'n Mot. p. 36; *see also* Second Am. Compl. p. 177.) This is true. *See Albers v. Mercedes-Benz USA, LLC*, Case No. 16–00881, 2020 WL 1466359, at *11 (D.N.J. Mar. 25, 2020). However, highlighting the latitude he has in pleading does not address the deficiencies raised by Judge Shipp and repeated by Speck here.

Plaintiff's fraud and negligent misrepresentation claims are premised on an alleged duty to timely disclose information that would purportedly be material in an investor's decision to buy, sell, or hold securities—including internal litigation and insolvency. (Second Am. Compl. pp. 178, 180.) A court within this District recently considered an analogous factual scenario in which the plaintiffs invested in a start-up company, the defendant became corporate counsel for the start-up, the start-up and its chief executive officer were named in a lawsuit, the plaintiffs made an additional investment and the individual plaintiff accepted a seat on the board, and the start-up, individual plaintiff, and others were sued by another investor for securities fraud. *Gould Ventures, LLC v. Cooley LLP*, Case No. 24–09485, 2025 WL 1482493, at *1–3 (D.N.J. May 23, 2025). The plaintiffs' fraud and negligent misrepresentation claims were premised, in part, on a failure to disclose fraud allegations underling the lawsuit prior to the plaintiffs' second investment and individual plaintiff's acceptance of a board seat. *Id.* at *11–12. The court dismissed the claims insofar as they were premised on an omission or duty to disclose the allegations, finding that no special relationship or duty to disclose existed. *Id.*

Acknowledging the obvious factual differences between *Gould Ventures LLC* and the case at bar—namely the differences in defendants' roles—I find

its reasoning persuasive.    Further, in light of Judge Shipp's denial of plaintiff's fraud and negligent misrepresentation claims based on his Section 10(b) and Rule 10b–5 analyses, my dismissal of those same claims above, and my conclusion that the second amended complaint inadequately cures the deficiencies identified by Judge Shipp, Counts 9 and 10 will be dismissed.

## IV.  CONCLUSION

For the foregoing reasons, Speck's motion to dismiss will be GRANTED IN PART AND DENIED IN PART.    Counts 1, 3, 9, and 10 of the second amended complaint will be dismissed as to Speck.[6]    An appropriate order accompanies this opinion.

   _/s/ Edward S. Kiel_

**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated:  September 2, 2025

---

[6] Dismissal of Counts 1, 3, 9, and 10 will be with prejudice.    Plaintiff states that Judge Shipp's decision following the parties cross-motions for reconsideration provided him just one opportunity to cure deficiencies.    (Pl.'s Opp'n Mot. p.37.)    He asks that if I dismiss any claims due to other deficiencies, that he be permitted to amend.    (*Id.*)    The dismissal of these counts follows Judge Shipp's earlier reasoning.    Judge Shipp also granted plaintiff leave to file a second amended complaint which was to "be the final amendment permitted."    (Mot. Recons. Order p.2.)    I find that the second amended complaints lingering deficiencies warrant dismissal with prejudice.    *See Vicente v. DePuy Synthes Cos.*, 570 F. Supp. 3d 232, 245 (D.N.J. 2021) (dismissing the second amended complaint with prejudice and noting that, despite two opportunities to amend, the amendments did "not suggest that the plaintiff [wa]s progressing in the direction of an actionable claim").